23-1254 United States v. Ryan Thomas, Eley and we will hear first from Liz Torrey. You may proceed. Thank you. Good morning, Your Honors. May it please the Court. Warren Torrey on behalf of Mr. Ryan Eley. I'd like to reserve three minutes for rebuttal and I will do my best to watch my time. Remand for resentencing is appropriate in this case for multiple reasons. Here the government agrees to remand for Montoya and Nishida errors. So given that, I would like to focus on the special conditions that are disputed and the Substantively Unreasonable Supervision Term. Under Ninth Circuit, that's already settled, but I'm kind of curious about this. So the district court failed to articulate all the standard conditions in sentencing. And so the allegation is that violates the defendant's due process rights. But in the pre-sentence report, all those standard conditions are reiterated in there. So doesn't that defendant have notice of what may be imposed and has an opportunity to object? I'm just having trouble understanding this. That's what I said in my dissent in Montoya. The defendant just issued a record dissent. So not in this case, Your Honor. In this case, the PSR does not list the standard conditions for review or consideration. It simply says standard conditions. It does not provide the exact language for which ones the court intended or that probation was recommending. So here we don't have proper notice as to which of those standard, if not all. So here, under Montoya, it's appropriate for remand, as the government agrees in this case. And I also wanted to address Your Honor's question from previous arguments as to this issue about prematurely addressing conditions of release. Under United States v. Gross, the illegality is not a proper grounds for modification. So here we need to raise the fact that these conditions are unconstitutional here on draft appeal. Layer modification may be appropriate for other reasons, but when we're raising the specific challenges that they're vague or overbroad, we need to do that here before Your Honors. So as to the special conditions of supervision, Mr. Ely challenged multiple, but the government only disputes two. Those are special conditions 14 and special conditions 16, both of which involve computer monitoring. Attorney? I would like to ask about the condition about appeal v. collateral challenge and the use of materials. And I understand in this case the government up front acquiesced that that needs to be changed. Explain to me what are the materials that he would need to have for a collateral challenge that require a carve-out from that condition? In the prior case, the language was so broad that it would reach statutes and case law. That isn't the case here. So what is it? What's the factual basis for asking for a carve-out for that? Here, Your Honor, there's a concern that there might be a need to review, for example, even evidence for a habeas petition or something of that nature. So he is entitled to have and review his stash of child pornography, that that needs to be carved out of his supervised release conditions. Do we allow drug defendants who are under conditions not to use drugs, do we have a carve-out because they might want to test the drugs for a collateral challenge? No, Your Honor. So it's contraband. He's not allowed to have child pornography. I don't understand. You have no factual basis to suggest that he needs to review that in order to bring a collateral challenge. That's the only thing that condition would bar him. I don't see how it's overbroad. Whether the government conceded or not, it's not overbroad. Explain what am I missing. And a collateral attack could happen at any time, right? So he'd be able to keep this stuff for decades. I'm not aware as to how that would work exactly, Your Honor. But here in this case, I think there's also a concern about when we're talking about the breadth of the special condition here and whether or not he can review even descriptions. And so that would be something as simple as his pre-sentence investigation report. This isn't like the prior case. It doesn't cover just descriptions. Here we have viewing any visual depiction or other means of sexually explicit conduct involving children or actual sexually explicit conduct involving adults. And so it's possible that that conduct or its descriptions could fall within that language. But this condition is also problematic for another reason that the government does not address, which is that it does not match the oral pronouncement that was made at sentencing. The court stated these restrictions would not apply to materials necessary for any future legal challenges or for sex offender treatment. And so we argue that any future legal challenges is somewhat broader than the language provided here, which is for any future appeals. For that reason, remand is also appropriate. I'm going back to read the list anyway, so I'm not sure that the language discrepancy is such a concern. I think the substantive concern that Judge Collins has raised is one that you're probably caught unprepared on because that wasn't identified as something the government was contesting in this case. But I'd still be interested in your thoughts about exactly how it is that your client needs access to the material in order to bring a collateral challenge. I'm as mystified as my colleague. Why does he need the porn to be able to present a legal challenge? I mean, it's not like he's going to successfully argue or even try to argue, oh, it's not really pornography. That's not going to be the subject of a legal challenge, collateral challenge. So what is? And so I can't speak to what the arguments would be in the collateral challenge, apart from the fact that this language about sexually explicit conduct could be read broadly to include anything that would describe these images. For example, like I've read. With the qualifier, though, you must not view or possess any visual depiction or any photograph. I mean, all that language at the front, that precatory language, seems to limit it to just the actual porn, not the PSR, for example. And, Your Honor, it's, again, in this case, while that even if we take it from the perspective of he's not permitted to have this for the purposes of collateral attack and that it doesn't extend to any other documentation or things that he might need to review for preparing a collateral attack, we still have this discrepancy in the language that was provided. So here, the district court is going to need to amend this language to either match its oral pronouncement or somehow further explain what is permitted when putting together a collateral attack. And this court's case law in COPE is very clear on that, which is that he has a right to this materials necessary to preparing that. And, unfortunately, I don't do collateral attack petitions myself, but it would be my understanding that this is something that is at least as written to. Correct appeal. There is a distinction. I understand that, and I understand you're not in a great position to talk about it. But, and I understand we're bound by COPE, but I'm having trouble conceptually understanding how his ability to protect his rights via collateral attack or appeal would be inhibited by his inability to actually have access to the pictures. What kind of argument is going to be made that's going to require access to his stash? It's already been defined as pornography. That's a factual challenge. Again, Your Honor, I think that there is this language in here that could be up for interpretation as to, again, what he can review in preparing that, which is problematic. Well, shouldn't we give some direction to the district court below? I mean, I don't want to give the signal saying you've got to file a max stash. I mean, is that what your client's insisting upon? Or are you just wanting to have this academic exercise done to clean up language? What does your client want? To ensure that these conditions are not overbrought and that the probation officer can make sure that he is in compliance, but in a way that makes sense to him, that he's on notice as to what this is. But this is what? This is child pornography? No, not in those words, Your Honor, no. But we want to make sure this is consistent with the court's precedent. And here, we provide in the 28-J letter, United States v. Benevento, this is helpful. It's a roadmap for this court. There was a similar porn prohibition condition. The court's language that it provided for the district court on remand was that it should vacate and remand for the district court to amend the condition to address this deficiency, and that because it exempted materials necessary to and used for any future appeals for sex offender treatment. So I think that that language is what another panelist provided. That would be appropriate in this case, so that we can make sure that this condition aligns with what COPE intends. And we've taken up a lot of your time on this issue, and it was an issue the government conceded. So I'm going to give you two minutes for rebuttal, but I'm also going to give you time to address the computer and monitoring issues, which is what you wanted to start with. So why don't you address that, please? Yes, Your Honor, and I'll do that briefly. So here, Special Condition 14 is vague and overbroad because it provides blanket language that computer monitoring should be installed. Here, this court's case law, United States v. Sales and United States v. Canton, are clear that blanket monitoring is improper. There needs to be some sort of limitation as to the kind or degree of monitoring permitted. And because it doesn't exist within this language, it needs to be remitted so that the district court can further explain, again, the kinds and degrees of monitoring. I'm not clear from the context of the language that the computer monitoring that is being referenced refers to monitoring for the types of things that are discussed earlier in the sentence, which is visual depictions of sexually explicit conduct involving children. So this language that appears at the beginning of Special Condition 14 is addressing what kind of devices and that this monitoring software has to be installed. If the device can do this, which we're concerned about and which we have an earlier prohibition you can't do, if the device can access this kind of material, which you're not allowed to have, it needs to have monitoring. Is it a logical reading of that, that the monitoring is to see whether it can, because it has the capacity to get the forbidden material, the monitoring is to look for the forbidden material? It seems built in already. That's what 16 actually says. It starts with to ensure compliance with the computer monitoring condition, which is 14. And then 14 limits this all to visual depictions, sexually explicit conduct, all defined under 18 U.S.C. 2256 and 2257. You read the two in tandem, don't you? And it says these searches shall be conducted for the purpose of determining whether the computer contains any prohibited data and to determine whether there have been attempts to modify it. It seems to tie into the thing that the conditions say is forbidden. So I disagree, Your Honors. If we look at Special Condition 14, it's saying that these are defining what the computers can do and what they're capable of storing. But when we look at KeenZone, KeenZone is helpful because it describes all the different types of monitoring software that were available, at least at the time that the court issued that decision. It describes that blanket monitoring software is overwrought because it could track every use, the entire activity of cell phones, computer usage. And in instances, some monitoring software takes snapshots of computer use every second of use. And so here that would be overly intrusive. We need something in Special Condition 14 that somehow limits that monitoring software to the degree and kind. In KeenZone, it was something such as internet activity. And here, turning to Special Condition 16 and whether that also addresses Your Honors' concern, the government points to this prohibited data language, but that is only applied to the prohibited data prior to the installation of the monitoring software. So here I would submit that that doesn't extend to all the ways in which Special Condition 16 is being used. But also, Special Condition 16 cannot limit Special Condition 14 because 16 is used to ensure that the software is working properly. It's not telling us what the monitoring software is looking for or looking through. So I would submit that there needs to be a limitation as to where the software can search and what it's looking for. And so here, even if Your Honors read Special Condition 14 more narrowly than we do, as to prohibited materials, there still needs to be a limit on where it can search for those prohibited materials, which this Court has already spoken as to that in the United States versus KeenZone in saying that internet-related activity would be appropriate, especially in a case such as this. And I'm well over my time, Your Honors, but I would just also note for the term of supervision here, the term of supervision was unreasonable because, in this case, the district court found that it saw differences in this case in comparison to other child pornography cases, and that finding cannot be reconciled with the maximum term. Okay. All right. Thank you, Your Honors. And as I said, I'll give you your opportunity to submit your request for approval. And we will hear now from Mr. Frank. Thank you. Good morning, Your Honor. May it please the Court. My name is Jim Fann, and I represent the United States of America. As defense counsel, appellate counsel, already conceded at the Special Condition 1011 and 12, which government has agreed to remand, that remand would be appropriate, even though in their reply brief, I think that they had somehow asked for the Court to strike those conditions, and the government would submit that. That would be inappropriate. So I have a question, and maybe it's more for your supervisors back in the office than it is for you, but we have two cases on calendar this morning, both of which are from your office, in which the government, in its red briefs on the exact same issue, took opposite positions. How is that possible? I do believe that the other counsel have submitted a letter and have changed the government's position on that. Based on an unpublished decision, and you might have gathered from the tenor of this, which we may not necessarily agree with, I don't understand how one U.S. Attorney's Office can submit two red briefs on the same issue and take inconsistent positions. That should not happen. Your Honor, I understand what you're saying, but obviously, like I said, the government's position now is consistent. And the government obviously … But you concede that he should have a carve-out to possess child pornography for purposes of a collateral challenge. That's the position of the government of the United States in this Court. Well, Your Honor, I believe the reason why we conceded in this case is too obvious. We are bound by code. Code, as I've explained to you, as I've explained in my questioning, code involved an overbroad condition where we said that it would reach, literally would reach statutes and case law about child pornography. That's the material we were referring to. The only material that is prohibited by this condition is the child porn. Why is the government conceding that he has a right to possess child porn for purposes of a collateral challenge? Well, the second reason why the government conceded is because the language the district court has imposed already includes carve-out for appeals. They will be making no … No, if they put in an erroneous condition, they should keep going the whole way. And the appeal is over. I mean, this is the appeal. He didn't get the material for the appeal. So, but the government thinks he should get back his stash of child porn so that he can have it for future reference for a collateral challenge. I don't agree with that's what the language says. The language says that the defendant, Mr. Eliak, can have material for the purpose of appeal. And in this case, the government is conceding for a collateral challenge. So, I say the provision of … The question is why. I mean, we are puzzled as to the carve-out for collateral challenge. We understand that he may have to take the lead on that himself, unlike the appeal, perhaps. But why the visual material is something he needs to be given access to, we just don't understand. And it may be that your office has taken the path that it has based on its understanding of cope. But we're still sitting here trying to figure out what's the real reason that a prisoner needs access to that and should be allowed to have it in prison. Well, Your Honor, I obviously haven't been sitting there listening to the question you posed to my opposing counsel. I understand that's your concern. You may take a different approach than, say, Benevento or cope. But in practice, I think Your Honor's concern can be addressed in practice. For example, let's say the probation officer finds prohibited material on the defendant's computer. It's allowed to ask the defendant, why do you have these items on your computer? And given the fact that special condition 10, which only carves out for the purpose of appeal and perhaps may remain collateral challenge, it is the defendant's burden to show, I have this particular material because I need it for appeal or collateral challenge. If he can't do that, he's violating the condition. So it's not a blanket condition to allow him to have childborn for, just because in case that I might need these for collateral challenge or appeals. He has to show to the probation officer he has them for that purpose because that's how the language of the condition is written. You are to possess these materials for the purpose of appeal and for collateral challenge. And if I have to send it every day or every hour because he has to be continuously working on his appeal, I mean, this is crazy. I don't think that's the thing, right? I understand what Your Honor's concerns are, but that's the underlying, the short rise of the rationale I'm proposing. I see very, very little reason why a petitioner, a defendant, will ever have this material, the visual depiction of sexual activities for any purpose on appeal or collateral challenge. So I believe that in practice, when the probation officer does find that material on the defendant's computer, I believe 99.9% of the time he can't justify it by saying that it is for appeal or collateral challenge because, like you said, I can't even see why you would have the visual material for appeal and collateral challenge. And I think the conditions, and I think under COPE, and the government's position here is that we don't want the limit but if it's 99.9%, as you just said, then the condition is not overbroad. And if he later, in some extraordinary turn of events, he actually does need the material for purposes of a collateral challenge, he can file for modification and the court can appoint counsel and counsel would review the materials to determine that. That's how this could be handled in an appropriate manner, but it's not an overbroad condition. It can't seemingly, conceivably ever apply. I understand, but we're bound by the language the district court has, in fact, imposed in this case, and it did carve out future appeals and the government's position is that if it carved out... But COPE itself points out why appeal is different from collateral challenge because COPE said in an appeal you have counsel and so everything can be filtered through counsel, whereas in a collateral challenge there's no right to counsel, and so in a collateral challenge you'll get it directly. Well, to the extent that Your Honor believes that both the opposing counsel and the government is wrong here to remand, then Your Honor, this court's free to reject our argument and hold that the condition is written in its constitution not overbroad and uphold that particular condition here. Do you want to address the other condition? Yes, Your Honor. I want to focus on the computer... I'll be kind of brief on the computer monitoring and computer search condition because Your Honors have already raised many of the points I want to address. Here, like I said, as the brief mentioned, there are limitations that make some of the language that this court has held in the past as problematic, and those limitations cure those languages. One, the search and monitoring conditions are limited to prohibited data. But Your Opposing Counsel, particularly with respect to Paragraph 16, makes a very good point, which is that there's only one use of the phrase prohibited data, and it's only with reference to checking whether there's prohibited data prior to the installation and otherwise not mentioned there. So why wouldn't, if this is going back for Montoya error anyway, why shouldn't this get tightened a little bit? Your Honor, like you said before, the conditions, the two conditions are really related and should be read in context. But then focusing with drawing inferences, if it's going back anyway, shouldn't this just what's inferred from reading it in context, shouldn't it just be made more explicit? Well, Your Honor, I do want to raise the fact that the review on these two conditions are for plain error because of the fact that Mr. Eli did not raise this issue in the district court, which had he raised it, the district court could have had the opportunity to say, well, let me tighten up the language here a little bit and keep it as plain error. And for the fact that there might be ambiguity as to the language, that should be construed in the district court's favor because the error must be plain. If it's ambiguous, it's obviously not plain. So that's one reason why I believe that the conditions be upheld as opposed to being sent back to revision. And second, I don't agree with opposing counsel's argument here. She focused very much on the method of monitoring because Special Condition 14 is the monitoring part to ensure that defendant doesn't obtain prohibited material. But in this case, defendant's wholesale prohibited from possessing pornography, period. To limit the monitoring to a certain method is just giving Mr. Eli a way to circumvent it. It doesn't matter whether he gets it from the Internet. It doesn't matter if a friend gets a USB drive containing child porn that he later puts on his computer. It doesn't matter if he goes to a public Internet cafe, if such a thing still exists, to download pornography, thereby circumvent the monitoring software, and they later on put that, what he downloaded onto his computer. And that's the problem here. The government believes you can't limit the method of monitoring because there are many, many ways in which Mr. Eli may obtain the material put on his device. To arbitrarily limit the method of monitoring is essentially giving Mr. Eli ways to evade the condition  We wouldn't limit a probation officer's ability to find whether or not a defendant possess drugs to the extent that he's prohibited from doing it. Why should we place that kind of limitation here when Mr. Eli has many, many ways of obtaining prohibited data? So I don't agree with opposing counsel that somehow this court should carve out some kind of limitation as to the monitoring itself, given that Mr. Eli has many, many ways of obtaining the prohibited data. Moving up briefly, unless you all don't have any more questions about these two conditions. Moving briefly to the lifetime supervision, first and foremost, this record here. You don't have one minute. You're in deficit. I'm sorry, Your Honor. Because you're ending up a lot of your time with questions. I'm sorry, Your Honor. But this record followed the Sentencing Commission's recommendation, which is that an offender who is convicted of possession of child pornography is recommended supervision his lifetime. And this court in Apodaca essentially held that the Sentencing Commission's position is justified, given that they have reviewed plenty of data in the past and conclude that lifetime supervision may be required for these individuals. And held that in order to overcome that presumption, the defendant must provide conclusive or near-conclusive data that child pornography possessors are not at future risk to reoffend. And Mr. Eli has not provided that particular data that Apodaca requires. And furthermore, there are other facts in this case that this court has relied on to show that the defendant may be at future risk. For example, he admitted to the probation officer. I think we understand. Thank you, Your Honor. Thank you, Counsel. All right. We'll hear from Ms. Troy. Thank you, Your Honors. I do agree with the government that we need to look at the plain language of these special conditions. That's what the court states in United States v. Nishida. When we look at the plain language of these conditions, they are vague or overbroad for the reasons we raised in our briefing. And I agree with Your Honor that these could be tailored to be more explicit on remand, because as from our position, the prohibited data from Special Condition 16 does not limit Special Condition 14. And we disagree with the government in its argument that monitoring does not need to be limited in any way. That is inconsistent with both United States v. Sales and United States v. Kinzon. The court has stated that its case law has never approved monitoring all of its forms. That comes directly from United States v. Kinzon. There needs to be some limitation. And here, when we look at the plain language, given that the sort of beginning piece of Special Condition 14, that does not explain the kinds or the degrees of monitoring permitted in this case, which is required by the district court. Additionally, Your Honors, we do not dispute that the supervision term was within the guideline range. However, the district court's findings don't justify the maximum term in this case, given the mitigation that was presented and its findings that this was different from other child pornography cases, and that Mr. Ely was capable of rehabilitation, unless Your Honors have any further questions. Thank you. Thank you, Counsel. The case just argued will be submitted, and the court will stand in recess for 10 minutes. All rise. This court shall stand in recess for 10 minutes.
judges: CLIFTON, COLLINS, Rodriguez